```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
TERRANCE ROSE,                                    :
             Petitioner,                          :      **MEMORANDUM OPINION**
                                                  :      **AND ORDER**
v.                                                :
                                                  :      20 CR 517-3 (VB)
UNITED STATES OF AMERICA,                         :      22 CV 10357 (VB)
             Respondent.                          :
--------------------------------------------------------------x
```

Briccetti, J.:

Petitioner Terrance Rose, proceeding pro se, moves pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Liberally construed, Rose's claims can fairly be summarized as follows:

(1) his attorney was constitutionally ineffective for (i) not discussing exculpatory or inadmissible evidence with him or explaining the facts of his case; (ii) pressuring him to plead guilty pursuant to a plea agreement he did not understand; (iii) not objecting to his mental competence to proceed; (iv) not objecting to various Sentencing Guidelines enhancements or otherwise making any effort to obtain a more favorable sentence; and (v) not objecting to the finding that he was a "career offender" under the Guidelines; and

(2) the evidence of his guilt was insufficient or inadmissible.

For the following reasons, the motion is DENIED and the petition is DISMISSED.

## BACKGROUND

On February 18, 2020, Rose and two co-conspirators, Dorian Byrd and Kareem Grant, traveled by bus from South Carolina to Grant's apartment in Middletown, New York. The next day, Rose and his co-conspirators tased and abducted an individual who had been lured to the apartment under the pretense of picking up money that Grant owed him for a prior marijuana

1

purchase.  Rose and his co-conspirators then ordered this individual to drive to the home of a marijuana dealer in Montgomery, New York, where Rose and Byrd, brandishing firearms, restrained the marijuana dealer with black tape and demanded money and valuables.  Rose and Byrd stole twelve pounds of marijuana, approximately $20,000 in cash, and other valuables from the residence.  Rose and his co-conspirators later divided up the robbery proceeds, and Rose and Byrd then traveled back to South Carolina.[1]

In an indictment filed on September 30, 2020,  Rose was charged with conspiring to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951 (Count One); substantive Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951 and 2 (Count Two); and brandishing a firearm in furtherance of a crime of violence, namely the robbery charged in Count Two, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii) and 2.

On August 30, 2021, pursuant to a plea agreement (Doc. #107-1), Rose pleaded guilty to Counts One and Two of the indictment.  In consideration of Rose's guilty plea, the government agreed to dismiss Count Three—the Section 924(c) firearms count—which otherwise would have exposed Rose to a mandatory minimum seven-year prison sentence to run consecutively to any other sentence imposed.  The plea agreement also included a Sentencing Guidelines stipulation, whereby the parties agreed to a base offense level of 20, as well a 5-level increase because a firearm was brandished or possessed, a 2-level increase because a person sustained bodily injury, a 4-level increase because a person was abducted to facilitate the commission of the offense, a 1-level increase because a quantity of a controlled substance was taken and the taking of the controlled substance was the object of the offense, and a 3-level downward

---

[1] These facts are taken from the unobjected-to offense conduct section of the presentence investigation report ("PSR"), which the Court adopted as its findings of fact at sentencing.  (Doc. #107-2 ("Sentencing Tr.")).  Citations to "Doc. #__" herein are references to documents filed in the ECF docket for case no. 20-cr-517-3 (VB).

adjustment for acceptance of responsibility, such that the final offense level was Level 29. The plea agreement also contained a stipulation that Rose was a "career offender," as defined in Section 4B1.1 of the Sentencing Guidelines, although whether he was a career offender or not, Rose's final offense level was 29. The parties also agreed that Rose had 11 criminal history points, which would have placed him in Criminal History Category V, except that because he was a career offender, his Criminal History Category was VI. At Level 29, Criminal History Category VI, Rose's agreed-upon advisory guideline range was 151-188 months' imprisonment. If Rose had not been a career offender, with a Criminal History Category of V, his advisory guideline range would have been 140-175 months' imprisonment.

At the change of plea hearing, the Court conducted a thorough plea allocution in accordance with Rule 11 of the Federal Rules of Criminal Procedure. (Doc. #72 ("Plea Tr.")).

First, the Court questioned Rose under oath regarding his competency. Rose stated that he was under the care of a psychiatrist at the Orange County Jail, he was taking prescription medications for post-traumatic stress disorder ("PTSD") and bipolar disorder, and the medications kept him stable and helped him understand what was happening. Rose also said that his mind was clear, he understood what was happening, and he had had enough time and opportunity to discuss his case with his attorney, Howard E. Greenberg, Esq. In addition, Rose confirmed he had discussed with Mr. Greenberg the charges against him, any possible defenses he might have, and the consequences of pleading guilty, and that he was satisfied with his attorney's representation. Following this questioning, and after both counsel confirmed they had

no doubt as to Rose's competence to plead guilty, the Court found Rose fully competent to enter an informed guilty plea.  (Plea Tr. 7-15).[2]

Next, after ensuring that Rose was aware of the charges against him, the possible penalties he faced, and the rights he was giving up by pleading guilty (Plea Tr. 15-28), the Court questioned Rose about his plea agreement with the government.  Rose said he had read the agreement, discussed every aspect of it with his attorney before signing it, and understood it at the time he signed it.  Rose also confirmed that no one had made any promise as to what his sentence would be, and no one had threatened, forced, or coerced him to enter into the plea agreement or to plead guilty.  In addition, Rose acknowledged his agreement that the applicable guideline range was 151-188 months' imprisonment, and that he waived his right to appeal any sentence of 188 months' imprisonment or less.  (Plea Tr. 28-31).

Rose then pleaded guilty to Counts One and Two of the indictment, and stated he was pleading guilty voluntarily and of his own free will.  (Plea Tr. 32-33).  Next, the government made a detailed proffer of the evidence it would have adduced at trial—including, among other things, witness testimony relating to the robbery, toll records and location information from the cellphones of Rose and his co-conspirators, video surveillance footage showing Rose and a co-conspirator entering the victim's home, license plate reader information, bus station purchase records, and video surveillance footage showing Rose and a co-conspirator in the aftermath of the robbery—all of which, according to the government, would have proven beyond a reasonable doubt that on or about February 19, 2020, Rose conspired with others to rob a marijuana dealer of drugs and drug proceeds, and that Rose did in fact rob the marijuana dealer.  (Plea Tr. 33-34).

---

[2]   Mr. Greenberg also advised the Court that he had spoken to his client about fifty times, and that although Rose was under a great deal of stress, he had made a rational decision to plead guilty and was competent to proceed.  (Plea Tr. 4-7, 15).

4

Rose acknowledged he heard what the prosecutor said and that it was substantially correct.  Rose then stated that he and others agreed to rob a drug dealer and then actually carried out the robbery.  (Plea Tr. 34-35).  The Court also specifically asked Rose about several aspects of the Guidelines stipulation in the plea agreement, and Rose admitted that during the robbery a firearm was brandished or possessed, a person sustained bodily injury, a person was abducted to facilitate the offense, and a quantity of marijuana was taken.  (Plea Tr. 35-37).

Based on the foregoing, the Court accepted Rose's guilty plea and adjudged him guilty on Counts One and Two—after first finding that Rose understood his rights and was waiving them knowingly and voluntarily with an understanding of the consequences of his guilty plea, including the potential sentences that could be imposed; that his guilty plea was voluntary and did not result from force, threats or promises, other than promises in the plea agreement; that Rose had admitted he was guilty as charged in Counts One and Two; and that his guilty plea was supported by an independent factual basis for each and every element of the crimes charged.  (Plea Tr. 40).

Prior to sentencing, Mr. Greenberg, with the assistance of a forensic mitigation specialist and a licensed master social worker, submitted a detailed sentencing memorandum that included multiple letters of support as well as Rose's recent physical and mental health records from the facility at which Rose had been detained.  The sentencing memorandum strongly advocated for leniency, and specifically for a sentence that was no greater than necessary, taking into account several mitigating factors, including Rose's difficult upbringing, his history of mental illness and substance abuse, his other health problems (including having contracted COVID-19), and the strong support of his family and friends.  (Doc. #88).

Rose was sentenced on February 22, 2022.  Consistent with the parties' plea agreement and the PSR, the Court found that the applicable advisory guideline range was 151-188 months' imprisonment, based on a final offense level of 29 and a criminal history category of VI.  The Court also found that Rose was a "career offender" as that term was defined in the Sentencing Guidelines, but also noted that whether or not he was a career offender, his final offense level was 29.  Without the career offender enhancement, Rose's criminal history category would have been V, and his advisory guideline range would have been 140-175 months' imprisonment.  Rose did not object to the career offender enhancement, which was consistent with then-applicable Second Circuit law.  (Sentencing Tr. 3-8).

At the sentencing hearing, the Court heard from both Rose's counsel and Rose himself.  Mr. Greenberg asked for leniency "in the name of the defendant's six children," and because of Rose's difficult upbringing and physical and mental health issues, as well as because Rose had been recruited to participate in the robbery conspiracy.  He also called the Court's attention to the many letters of support Rose had received.  (Sentencing Tr. 12-14).  Speaking on his own behalf, Rose acknowledged his guilt and apologized to his victims.  (Sentencing Tr. 14-16).

After considering all the factors set forth in 18 U.S.C. § 3553(a), the Court imposed a sentence of 120 months' imprisonment, which constituted a substantial downward variance from the applicable guideline range of 151-188 months.  It also constituted a substantial downward variance from the range (140-175 months) that would have applied had Rose not been deemed a career offender.  The Court focused principally on the extraordinarily serious nature of the offense—an armed robbery that involved the abduction of another person to drive the robbers to the victim's home, committed by a person (Rose) who had multiple prior felony convictions and served multiple prior prison sentences, and who had been released from jail only two weeks

earlier. The Court also considered the following mitigating factors which, in combination, warranted the downward variance: Rose had been recruited by others, making him less culpable than his co-defendants; he endured a difficult upbringing; he suffered from PTSD, anxiety, depression, and bipolar disorder, as well as several physical health problems; he had a long history of substance abuse; and he enjoyed the strong support of his family and friends. The Court stated that the 120-month prison sentence was sufficient, but not greater than necessary, to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, and protect the public from further crimes of the defendant. (Sentencing Tr. 19-25).

Importantly, the Court also stated that "even if the defendant was not deemed a career offender under section 4B1.1, in other words, if the guideline range was a little lower, even if that were the case, I would still impose a sentence of 120 months either way." (Sentencing Tr. 26).

## DISCUSSION

I.    Ineffective Assistance of Counsel Claim

To prevail under the familiar standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), Rose must (i) demonstrate that his attorney's performance fell below an "objective standard of reasonableness," meaning it amounted to incompetence under "prevailing professional norms," id. at 688, 690, and (ii) affirmatively prove prejudice, meaning "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694, not merely that an error "had some conceivable effect on the outcome." Id. at 693. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

Moreover, "[j]udicial scrutiny of counsel's performance must be highly deferential," and the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland v. Washington, 466 U.S. at 689.  Indeed, this Court will not second-guess strategic or tactical decisions made by counsel.  This is because there are many ways to provide effective assistance in a given case.  "Rare are the situations in which the 'wide latitude counsel must have in making tactical decisions' will be limited to any one technique or approach."  Harrington v. Richter, 562 U.S. 86, 106 (2011) (quoting Strickland v. Washington, 466 U.S. at 689).

Rose's ineffectiveness of counsel arguments fail because the record conclusively demonstrates his attorney's performance did not fall below an objective standard of reasonableness, and, in any event, Rose suffered no prejudice.

Specifically, Rose's assertions that his attorney did not discuss exculpatory or inadmissible evidence with him or explain the facts of his case, and that his attorney improperly pressured him to plead guilty pursuant to a plea agreement Rose did not understand, are all squarely contradicted by Rose's statements under oath at his change of plea hearing.  Rose said he and his attorney did discuss the charges against him, any possible defenses he might have, and the consequences of pleading guilty.  Rose also stated he was satisfied with his attorney's representation of him; that he understood his rights and was waiving them knowingly and voluntarily with an understanding of the consequences of his guilty plea, including the potential sentences that could be imposed; and that his guilty plea was voluntary and did not result from force, threats, or promises other than promises in the plea agreement.  Rose's assertions are also squarely contradicted by his acknowledgement that the government's proffer of the evidence it would adduce at trial was substantially correct; that he and others agreed to rob a drug dealer and

8

then actually carried out the robbery; that a person had been abducted to facilitate the robbery; and that during the robbery a firearm was brandished or possessed and a quantity of marijuana was taken.

Moreover, Rose stated under oath that he had read the plea agreement—which included the government's agreement to dismiss a seven-year mandatory consecutive sentence—discussed every aspect of the agreement with his attorney before signing it, and that he understood the agreement at the time he signed it.  He also confirmed that no one had threatened, forced, or coerced him to enter into the plea agreement or to plead guilty, and that no one had made any promise as to what his sentence would actually be.

In short, the record is absolutely clear that Rose pleaded guilty not because he did not understand the evidence against him or was unaware of supposedly exculpatory or "inadmissible" evidence, or because he was pressured to plead guilty, or because he did not understand the plea agreement or was pressured to sign it.  Rather, the record demonstrates that Rose knowingly and voluntarily pleaded guilty because he <u>was</u> guilty and knew the evidence would have proven him guilty beyond a reasonable doubt, and that he did so pursuant to a plea agreement that gave him significant benefits and that he understood after discussing it with his attorney.  Under these circumstances, and in light of this record, there is simply no evidence to support Rose's assertion that his attorney's conduct fell below an objective standard of reasonableness.  Moreover, even if counsel's performance was objectively unreasonable (which it was not), Rose has not satisfied the heavy burden of showing "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985); in other words, he has not affirmatively shown prejudice.

Likewise, defense counsel's failure to object to Rose's mental competence to proceed did not constitute ineffective assistance of counsel.  Before accepting Rose's guilty plea, the Court extensively addressed Rose's mental competence.  In response to the Court's questions, Rose stated that he was under the care of a psychiatrist at the Orange County Jail, he was taking prescription medications for PTSD and bipolar disorder, and the medications kept him stable and helped him understand what was happening.  Rose also said his mind was clear, he understood what was happening, and that he had had enough time and opportunity to discuss his case with his attorney.  Thus, there was no basis for Mr. Greenberg to object to Rose's mental competency to proceed, and therefore his failure to object cannot be characterized as ineffective assistance of counsel.

Moreover, there is no merit to Rose's claim that his attorney was ineffective for not objecting to various Sentencing Guidelines enhancements or otherwise making any effort to obtain a more favorable sentence.  As described above, the record conclusively demonstrates that Mr. Greenberg had no basis to object to the Guidelines enhancements because they were all agreed to in a plea agreement that Rose understood at the time he signed it and because, based on the facts of the case, they were all correct.  During the course of the offense, a firearm was brandished or possessed,[3] a person sustained bodily injury, a person was abducted to facilitate the commission of the offense, and a quantity of marijuana was taken and the taking of the

---

[3]    The Guidelines enhancement for brandishing or possessing a firearm applied because the government dismissed Count Three (the Section 924(c) count), which charged Rose with brandishing a firearm in furtherance of a crime of violence.  See U.S.S.G. § 2K2.4 and Application Note 4.

marijuana was the object of the offense.  Having no basis to object, it was not unreasonable for Mr. Greenberg not to object, and thus his performance was not constitutionally ineffective.[4]

The record also conclusively refutes Rose's claim that his counsel was ineffective for not making an effort to obtain a more favorable sentence.  First of all, Mr. Greenberg did make an effort to obtain a favorable sentence, submitting an extensive sentencing memorandum with the assistance of a mitigation specialist and a social worker that included letters of reference and Rose's physical and mental health records, and arguing for a downward variance at the sentencing proceeding itself.  Indeed, he succeeded in that regard—the Court imposed a prison sentence of 120 months, which was well below the low end of the applicable guideline range (151 months), and also well below the bottom of the range that would have applied had Rose not been deemed a career offender (140 months).  Thus, Mr. Greenberg's performance in connection with sentencing was entirely reasonable and thus not constitutionally ineffective.

Finally, the record conclusively demonstrates that defense counsel's failure to object to the finding that Rose was a career offender, as defined in Sections 4B1.1 and 4B1.2 of the Sentencing Guidelines, was not unreasonable.  First, the parties stipulated in the plea agreement that Rose was a career offender under the Guidelines.  Second, the determination that Rose was a career offender was correct at the time it was made at sentencing on February 22, 2022.  It was not until July 21, 2022, that the Second Circuit held that Hobbs Act robbery was not

---

[4]    Rose also apparently claims his attorney was ineffective for failing to object to the PSR's assignment of one criminal history point to a domestic violence conviction he sustained in 2015 (PSR ¶ 54), as well as the PSR's assignment of criminal history points to two offenses for which he was sentenced on the same day in 2009 but which were separated by an intervening arrest (PSR ¶¶ 50-51).  However, Rose agreed to this criminal history calculation in his plea agreement (Doc. #107-1), and, as explained in the government's letter of September 28, 2023 (Doc. #130), based on publicly-available South Carolina court records, these criminal history points were properly assessed.  Counsel's failure to object to a previously agreed-to criminal history calculation which was in fact correct is not constitutionally ineffective.

"categorically" a "crime of violence" as that term is defined in Section 4B1.2(a).  See United States v. Chappelle, 41 F.4th 102, 104 (2d Cir. 2022) ("Hobbs Act robbery can be committed based solely on violence against property, whereas a 'crime of violence' under Section 4B1.2 must be based on violence against people.").  Thus, it was not objectively unreasonable not to object to the applicability of the career offender guideline given the state of the law at the time of the plea agreement and sentencing.  See Gonzalez v. United States, 2022 WL 890907, at *3 (S.D.N.Y. Mar. 25, 2022).  Moreover, the Court specifically stated at sentencing that it would have imposed the same 120-month prison sentence even if the career offender designation did not apply.  (Sentencing Tr. 26).  Thus, Rose cannot show he was prejudiced by counsel's failure to object to the career offender designation, see Gonzalez v. United States, 2023 WL 2052394, at *2 (2d Cir. Feb. 17, 2023) (no prejudice under Strickland when defendant's sentence would have been the same even if defendant was not a career offender), and his ineffective assistance of counsel claim fails on this basis as well.

II.     Insufficient Evidence Claim

Rose also claims the evidence of his guilt was insufficient or inadmissible.  Even assuming this claim was not waived by his guilty plea, the record conclusively shows it is without merit.  As described above, at his change of plea proceeding, Rose acknowledged the government's detailed proffer of the evidence it would have introduced at trial was substantially correct.  Rose also stated, under oath, that he and others agreed to rob a drug dealer and then actually carried out the robbery.  In addition, Rose admitted that during the robbery a firearm was brandished or possessed, a person sustained bodily injury, a person was abducted to facilitate the offense, and a quantity of marijuana was taken during the course of the robbery.

Because Rose's claim that the evidence was insufficient or inadmissible is contradicted by his own sworn statements, that claim is rejected as entirely without merit.

\*   \*   \*   \*   \*

Under these circumstances, because the files and records of this case conclusively show Rose is not entitled to relief under Section 2255, the Court need not grant a hearing to determine the issues and make findings of fact and conclusions of law. See 28 U.S.C. § 2255(b); Puglisi v. United States, 586 F.3d 209, 214 (2d Cir. 2009).

## CONCLUSION

Petitioner Terrance Rose's motion under 28 U.S.C. § 2255 is DENIED and the petition is DISMISSED.

As petitioner has not made a "substantial showing of the denial of a constitutional right," a certificate of appealability will not issue. 28 U.S.C. § 2253(c)(2).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

The Clerk is instructed to close case no. 22-cv-10357 (VB).

Chambers will mail a copy of this order to petitioner at the following address:

Terrance Rose, Register No. 06502-509
USP McCreary
P.O. Box 3000
Pine Knot, KY  42635

Dated: May 9, 2024
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge